# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIFFANY FABIYI, | ) |
|                       Plaintiff, | ) No. 11 CV 8085 |
| v. | ) Magistrate Judge Young B. Kim |
| MCDONALD'S CORPORATION, | ) |
|                       Defendant. | ) June 23, 2014 |

## MEMORANDUM OPINION and ORDER

Before the court is Defendant McDonald's Corporation's ("the company") bill of costs. For the following reasons, the company is awarded the sum of $1,000 in costs:

## Background

In November 2011, Plaintiff Tiffany Fabiyi, proceeding *pro se*, filed this action against her former employer alleging unlawful discrimination on the basis of race, sex, marital status, and disability. (R. 1-3.) She alleged violations under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.* (R. 1.)

In 2012 the parties consented to the jurisdiction of this court for all further proceedings in the case, including the entry of final judgment. (R. 17.) Ultimately, this court granted the company's motion for summary judgment and entered judgment in its favor. (R. 81-83.) The company submitted a bill of costs to the court

pursuant to Federal Rule of Civil Procedure 54 seeking $7,816.83. (R. 90.) The court informed Fabiyi that she had until May 2, 2014, to file a response to the bill of costs, (R. 91), but she chose not to respond. After the court informed her that it was within its discretion to consider her indigence when assessing the bill of costs, (R. 92), Fabiyi filed documents to support her claim that she is incapable of paying the company's costs at this time or in the future, (R. 93).

## Analysis

Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." There is a strong presumption in favor of awarding costs to the prevailing party. *Park v. City of Chicago*, 297 F.3d 606, 617 (7th Cir. 2002). But the decision to award costs is firmly within the discretion of the district court. *O.K. Sand & Gravel, Inc. v. Martin Marietta Techs., Inc.,* 36 F.3d 565, 571 (7th Cir. 1994).

Fabiyi did not contest any of the line items in the company's bill of costs. Even so, this court "must determine that the expenses are allowable cost items and that the costs are reasonable, both in amount and necessity to the litigation." *Weihaupt v. Am. Med. Ass'n,* 874 F.2d 419, 430 (7th Cir. 1989). The definition of "costs" as used in Rule 54(d) is set forth in 28 U.S.C. § 1920, which states that the court may tax as costs:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where

2

the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

**A.    Subpoena Fees**

The company seeks $271.50 for fees paid to LaSalle Process Servers LP for "[s]ame day rush" delivery of subpoenas for Dr. Seth Osafo and Robert Francis King. But the company does not explain why same-day service was required. The invoice provides one fee for service of both subpoenas—$271.50—and does not indicate an hourly fee or whether the expedited service was an additional charge.

Section 1920(1) permits the court to assess costs for clerk and Marshal fees, a category that includes costs related to service of subpoenas. 28 U.S.C. § 1920(1); *Lalowski v. Corinthian Sch., Inc.,* No. 10 CV 1928, 2013 WL 3774002, at *2 (N.D. Ill. July 18, 2013). However, the cost must be reasonable and necessary, *see Soler v. Waite*, 989 F.2d 251, 255 (7th Cir. 1993), and "may not exceed the U.S. Marshal's rate at the time process was served," *Hernandez-Martinez v. Chipotle Mexican Grill, Inc.,* No. 11 CV 4990, 2013 WL 2384251, at *2 (N.D. Ill. May 30, 2013) (citing *Collins v. Gorman,* 96 F.3d 1057, 1060 (7th Cir. 1996)). The U.S. Marshal's statutory rate for service of subpoenas in February 2013, when the subpoenas were served, was "$55 per hour (or portion thereof) for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses." *See* 28 C.F.R. § 0.114(a)(3) (2008). The invoices that the company submitted from its process server do not indicate the number of hours it

3

took to serve the two subpoenas. Accordingly, the court reduces the amount requested to the cost of one hour per subpoena, or $110 total.

**B.     Medical Records Fees**

The company submitted invoices and checks showing that it spent $95.01 subpoenaing medical records from Fabiyi's medical providers. These copies of medical records were "necessarily obtained for use in the case" because Fabiyi's ADA claims were premised on her allegation that she was under a medical disability. Costs of obtaining medical records are "clearly allowable" under Rule 54(d). *Finchum v. Ford Motor Co.,* 57 F.3d 526, 534 (7th Cir. 1995). Accordingly, the court finds that the company is entitled to recover this cost.

**C.     Photocopying Fees**

The company seeks $1,912.62 for fees for exemplification and the costs of making copies of materials necessarily obtained for use in the case at a rate of 15 cents per page. The price of 15 cents per page is reasonable. *See Hernandez-Martinez*, 2013 WL 2384251 at *4 ("Courts in this district have generally held that 10 to 20 cents per page is a reasonable cost for black and white copies.").

To establish that the copies are "necessarily obtained for use in the case," a party need not explain why each individual copy was necessary. *Nat'l Org. for Women, Inc. v. Scheidler,* 750 F.3d 696, 698-99 (7th Cir. 2014). Rather, if a litigant can establish that the papers were "reasonably and prudently obtained," as evaluated from the perspective of "how things seemed when the expenditures were made, without the benefit of hindsight," and if the litigant supplies the affidavit

4

required by 28 U.S.C. § 1924 that verifies the accuracy of the costs sought, then "[n]o statute or rule requires more." *Id.*

In this case, an attorney for the company supplied the affidavit required by 28 U.S.C. § 1924 in which he verified with a statement that the copies for which the company seeks reimbursement were "necessarily obtained for use in the case." (R. 90-2 ¶ 5.) The affidavit describes those copies as "motions, pleadings, and discovery papers," which include "one copy of each discovery paper for service on Plaintiff, and two copies of each document that the company filed with this Court." (Id. at ¶¶ 5-6.) The company did not estimate how many copies it made of motions, pleadings, and discovery papers in total, or what percentage of those copies were for its own convenience, nor did it submit any internal or external records or invoices for photocopying. Moreover, the court notes with some concern that the total copying charge sought by the company of $1,912.62 is not divisible by 15 cents, the amount it seeks per page, which raises a question about the accuracy of its recordkeeping of its photocopying expenses. Perhaps this anomaly is due to a sales tax collected by an outside photocopying vendor, but without any invoices, the court cannot draw that conclusion. Accordingly, the company's request for copying and printing costs is denied. *See Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 979 (N.D. Ill. 2010) (holding that where the prevailing party has failed to provide sufficient information to ascertain that the costs are authorized, denial is an appropriate outcome); *see also Telular Corp. v. Mentor Graphics Corp.*, No. 01 CV 431, 2006 WL 1722375, at *5 (N.D. Ill. June 16, 2006) (denying costs where

5

prevailing party failed to provide sufficient information to show which copies were for the court, for opposing counsel, or for attorney convenience); *Vigortone Ag Prods., Inc., v. PM Ag Prods., Inc.*, No. 99 CV 7049, 2004 WL 1899882, at *8 (N.D. Ill. Aug. 12, 2004) (noting that a court "should deny photocopying costs where the prevailing party fails to address the purpose of the copies, whether multiple copies were made of the same documents, or what documents were copied").

**D.    Videotaping Fees**

The company seeks $2,237 for the cost of videotaping Fabiyi's two depositions. A district court may tax under Rule 54(d) the costs associated with the videotaping of a deposition. *Little v. Mitsubishi Motors N. Am., Inc.,* 514 F.3d 699, 701 (7th Cir. 2008) ("The first half of [the plaintiff's] contention, that § 1920 does not permit district courts to award costs for video-recorded depositions at all, is foreclosed by our prior decisions holding that such costs may be taxed.") (citing *Barber v. Ruth,* 7 F.3d 636, 645 (7th Cir. 1993), and *Commercial Credit Equip. Corp. v. Stamps,* 920 F.2d 1361, 1368 (7th Cir. 1990)).[1] The company submitted invoices in the amount of $2,237 for the videotaping of Fabiyi's two depositions. These costs are allowable.

**E.    Transcript Fees**

Section 1920(2) authorizes costs to be awarded for stenographic transcripts "necessarily obtained for use in the case." The company seeks $3,294.70 for

---

[1] Both *Barber* and *Commercial Credit* were superceded by a 1993 amendment to Federal Rule of Civil Procedure 30. Rule 30(b)(3)(A) currently authorizes depositions to be taken by audio, audiovisual, or stenographic means. Fed. R. Civ. P. 30(b)(3)(A).

6

transcripts of the depositions of Dr. Seth Osafo and Fabiyi. The company relied on both of these depositions in its memorandum in support of its motion for summary judgment, so this court concludes that the transcripts were necessarily obtained. That the company also seeks reimbursement for the video recording of Fabiyi's deposition does not impact the analysis. *See Little,* 514 F.3d at 702 (taxing cost of stenographic transcript of a videotaped deposition that the defendant relied on in its motion for summary judgment). Accordingly, this court finds that the company is entitled to $3,294.70 for deposition transcripts pursuant to 28 U.S.C. § 1920(2).

As such, this court finds that the company is entitled to recover the amount of $5,736.71 in costs.

**F. Fabiyi's Indigence**

It is "within the discretion of the district court to consider a plaintiff's indigency in denying costs under Rule 54(d)." *Badillo v. Cent. Steel & Wire Co.,* 717 F.2d 1160, 1165 (7th Cir. 1983). In *Rivera v. City of Chicago*, 469 F.3d 631, 635-36 (7th Cir. 2006), the Seventh Circuit provided guidance to the district courts to aid in the consideration of the applicability of the indigence exception, which the court described as "a narrow one." "First, the district court must make a threshold factual finding that the losing party is 'incapable of paying the court-imposed costs at this time or in the future.'" *Rivera*, 469 F.3d at 635 (quoting *McGill v. Faulkner,* 18 F.3d 456, 459 (7th Cir. 1994)). For purposes of this finding, the losing party must provide documentary evidence of his or her income, assets, and expenses. *Id.*

7

Secondly, the district court should consider "the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case." *Id.*

Here, Fabiyi filed a financial affidavit in November 2011 with her application to proceed *in forma pauperis*. (R. 4.) The application states that Fabiyi's employment at the company terminated in July 2011 and that she had not found new employment. (Id. at 1.) She had no income or assets other than unemployment benefits and other public assistance. (Id. at 2.) Also, two dependent grandchildren, both aged 10 at the time, were living with her. (Id.) Finding these facts sufficient to establish Fabiyi's inability to pay costs, the court granted Fabiyi's motion for leave to proceed *in forma pauperis*. (R. 6.)

Fabiyi's financial circumstances improved in July 2012 when she obtained employment as a driver with Septran at a rate of $11.25 per hour. (R. 76, Fabiyi Dep. at 403-04.) According to a May 23, 2014 pay stub that she filed with the court to prove her indigency, she remains employed with Septran at a rate of $11.90 per hour and worked about 80 hours over a two-week period. (R. 93-1 at 6.) Because Fabiyi submitted only one pay stub and no annual earnings statement or tax return, this court does not have enough information to conclude whether Fabiyi holds a regular 40 hour a week position. If Septran provides about 40 hours of work every week, then Fabiyi earns more than $2,000 a month before tax withholdings. Fabiyi did not submit an updated financial affidavit to inform the court of any new assets or savings. She did not disclose whether her two grandchildren are still depending on her for support or whether she continues to receive government

assistance in the form of a link card. (See R. 4 at 2.) Regarding expenses, Fabiyi submitted a renewed Section 8 Housing Voucher Contract, which states that her monthly rent expense will increase to $466 from $229 effective June 1, 2014. (Id. at 3.)

The company argues in its reply that this evidence is insufficient to meet Fabiyi's burden under step one of the *Rivera* test. The company faults Fabiyi for failing to disclose her anticipated annual income, her weekly expenses, and whether she has any additional assets. The company argues that Fabiyi's submission does not show that she is currently, and for the foreseeable future, unable to pay the company's bill of costs.

While this court agrees that Fabiyi's recent submission does not speak to her inability to pay at some time in the future, there are certain indicia of her limited capacity for earning that are beyond dispute. For example, Fabiyi has a high school diploma but she did not obtain an advanced degree. (R. 74, Fabiyi Dep. at 52:22-53:15.) Her employment history shows a series of hourly-wage jobs, including 10 years of working as a cashier at Jewel, a few months of clerical work as a temp agent for Manpower, a period of employment with SEI, an outsourcing group that works for the company, and her employment with the company. (R. 74, Fabiyi Dep. at 42:11-12, 54:17-55:6, 58:10-59:14.) She also worked for Richlee Vans for a few months, making an hourly wage of $8 to $11 an hour. (R. 76, Fabiyi Dep. at 394:16-396:5.) As a driver for Septran, her hourly wage is greater than when she was employed by the company. (Id. at 407:6-9.) Based on this work history and

9

education, it is unlikely that Fabiyi will obtain regular employment at a rate vastly higher than her current hourly wage of just under $12 an hour. Notwithstanding her current employment, she continues to qualify for a Section 8 housing voucher, which shows that the local housing authority concluded that because of her income and household size, hers is an "extremely low income household[ ]." *See* DuPage Housing Authority, http://www.dupagehousing.org/programs/rental-housing-support-program/ (last visited June 20, 2014). Based on this evidence, this court finds that Fabiyi is "incapable of paying the [the entirety of] the court-imposed costs at this time or in the future." *See Rivera*, 469 F.3d at 635.

The second part of the *Rivera* test is not clearly in Fabiyi's favor. The factors that support Fabiyi's claim for the application of the indigence exception are the amount of costs sought and her good faith. The allowable costs sought by the company are not high compared to other federal employment cases, but they represent nearly three times Fabiyi's monthly pre-tax income (assuming that she remains employed for 40 hours a week at Septran). Regarding good faith, this court finds that during settlement conferences and court appearances, Fabiyi conveyed a sincere belief that she had been harmed by discriminatory employment practices, and there is no evidence of an improper motive. But the third *Rivera* factor of "the closeness and difficulty of the issues raised by a case" is not in Fabiyi's favor. *See Rivera*, 469 F.3d at 635-36. As evidenced by this court's memorandum opinion awarding summary judgment to the company, there were no close issues of fact or difficult issues of law. (R. 82.)

Fabiyi sought justice in multiple venues and prevailed in none. She aggressively used the court system to pursue legal theories that could not survive summary judgment, and her attempts to vindicate her rights caused the company to expend significant resources. "[I]ndigence is not a blanket excuse for paying costs," and "allowing the district court discretion to impose costs on indigent litigants 'serves the valuable purposes of discouraging unmeritorious claims. . . .'" *Rivera*, 469 F.3d at 635 (quoting *McGill v. Faulkner,* 18 F.3d 456, 460 (7th Cir. 1994)). "Someone has to bear the costs of litigation, and the winner has much the better claim to be spared them—not just a morally or economically better claim, but under Rule 54(d) a legally better claim. . . . Straitened circumstances do not justify filing weak suits and then demanding that someone else pay the bill." *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 734 (7th Cir. 1999). There is a strong presumption that the prevailing party will recover costs. Fabiyi has some capacity to share in the company's costs, and so she must bear them to the extent that she can manage.

## Conclusion

For the foregoing reasons, McDonald's's petition for costs is granted in the amount of $1,000.

**ENTER:**

_____
Young B. Kim
United States Magistrate Judge

11